IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TONY LINEHAN and TIGER
TRANSPORTATION, LLC,

                            Plaintiffs,                          OPINION and ORDER

    v.                                                                        20-cv-718-jdp

PACCAR, INC. d/b/a PETERBILT MOTORS
COMPANY,

                            Defendant.

---

This case is about a semi-tractor truck manufactured by defendant PACCAR, Inc. and purchased by plaintiff Tony Linehan and his company, plaintiff Tiger Transportation, LLC. Plaintiffs allege that the truck has numerous defects that PACCAR has failed to fix as required by Wisconsin's so-called "Lemon Law," Wis. Stat. § 218.0171.

PACCAR moves for summary judgment, not on the ground that it complied with the Lemon Law, but on the ground that the Lemon Law simply doesn't apply to plaintiffs' truck. Dkt. 8. The question is whether plaintiffs purchased or accepted transfer of the truck in Wisconsin. For the reasons explained below, the court concludes that neither event occurred in this state, so plaintiffs don't have a claim under the Lemon Law, and the court will grant PACCAR's motion for summary judgment.

BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Plaintiff Tony Linehan lives in River Falls, Wisconsin. In the fall of 2018, Linehan decided that he wanted to purchase a new Peterbilt semi-tractor truck. He contacted Nicholas

Florin, a sales representative who had assisted him with previous truck purchases. Florin's office is in South St. Paul, Minnesota, but he sells vehicles for Allstate Peterbilt dealerships in both Minnesota and Wisconsin.

Plaintiffs say that Florin identified a truck for sale at an Allstate dealership in Eau Claire, Wisconsin. PACCAR says that Florin identified a truck in South St. Paul, and it cites an online advertisement from the time that identifies the truck as being offered for sale in South St. Paul, Dkt. 12-3. (River Falls is about 60 miles from Eau Claire and 30 miles from South St. Paul.) It's undisputed that Linehan test drove the truck at Allstate Peterbilt of Eau Claire, but neither side cites evidence about how long the truck was in Eau Claire or how it got there.

A few days later, Linehan told Florin that he wanted to purchase the truck. Linehan met with Florin at his office in South St. Paul to finance the truck. Linehan made a down payment of $15,000 and signed all documents for purchasing and financing the truck, including: the purchase order; an installment payment contract; a warranty agreement; and a form authorizing Allstate employees to "sign[] his name to any and all forms necessary for transfer of [his] right, title, and interest in, and to the . . . motor vehicle." The parties dispute where the truck was located at this time, but it's undisputed that Linehan left without the truck.

About a week later, Linehan picked up the truck at the Eau Claire dealership. He signed no documents at the time and had no interaction with staff. The truck was left outside the gate of the dealership for Linehan, and the keys were left on the dipstick.

The court has jurisdiction under 28 U.S.C. § 1332, which applies when the plaintiffs and defendants are citizens of different states and the amount in controversy is more than $75,000. Linehan is a citizen of Wisconsin, and he is the sole member of Tiger Transportation,

so Tiger Transportation is also a citizen of Wisconsin. PACCAR's principal place of business is in Washington, and it is incorporated in Delaware, so it is a citizen of those two states. The amount in controversy is more than $75,000 because plaintiffs seek return of the purchase price and incidental expenses, which are more than $150,000.

ANALYSIS

Wisconsin's Lemon Law provides extra-contractual remedies against a manufacturer of a defective "motor vehicle." Wis. Stat. § 218.0171. At issue in PAACAR's motion is the law's definition of "motor vehicle," which is "any motor driven vehicle required to be registered under ch. 341 or exempt from registration under s. 341.05(2) . . . which a consumer purchases or accepts transfer of in this state." Wis. Stat. § 218.0171(1)(d). The parties agree that plaintiffs' claims fail if the truck plaintiffs purchased doesn't satisfy this definition.[1]

The dispute is over the phrase "purchases or accepts transfer of in this state." Plaintiffs contend that they purchased the truck and accepted transfer of it in Wisconsin; PACCAR contends that plaintiffs purchased the vehicle and accepted transfer of it in Minnesota.

A. Purchase

The Lemon Law doesn't include a definition of the term "purchases." And case law doesn't provide a precise definition either. But this court concluded that a consumer purchased a vehicle in Wisconsin within the meaning of the Lemon Law when "the parties signed a purchase contract and the dealer accepted a down payment at plaintiffs' home in Wisconsin." *Begalke v. Sterling Truck Corp.*, 437 F. Supp. 2d 847, 850 (W.D. Wis. 2006).

---

[1] The parties assume that both plaintiffs have a right to sue under the Lemon Law, so the court doesn't consider that question.

*Begalke* relied on *Henry ex rel. Weis v. General Casualty Co. of Wisconsin*, an insurance case in which the court of appeals needed to decide who owned a vehicle for the purpose of determining liability for a car accident. 225 Wis. 2d 849, 857, 593 N.W.2d 913, 916 (Ct. App. 1999). The driver of the car had verbally agreed with the dealer on a purchase price at the time of the accident, but she had not yet signed a purchase contract or made a down payment. *Id.* at 855, 858–59. The court of appeals looked to Wis. Admin. Code § TRANS 139.05(1), which requires every motor vehicle sale to have a written signed contract and an accepted down payment, deposit, or title for trade-in unit from a prospective retail purchaser. As a result, the court of appeals concluded that the dealer "never transferred its ownership" to the driver. *Id.* at 859. Although *Henry* wasn't a Lemon Law case, *Begalke* found it to be persuasive on the question of "what it means to purchase a vehicle under Wisconsin law." *Begalke*, 437 F. Supp. 2d at 850

It's undisputed that plaintiffs made the down payment and signed the purchase contract in Minnesota, so, following the logic of *Begalke* and *Henry*, plaintiffs purchased the vehicle in Minnesota. Neither side questions the holding in *Begalke* or its reliance on *Henry*, but plaintiffs say that there is "a factual dispute" about the location of the purchase for three reasons: (1) the truck's certificate of origin "shows the owner as based in Wisconsin"; (2) the truck's inspection report from before the purchase shows Wisconsin as the location of the inspection; and (3) the dealership didn't charge plaintiffs with Minnesota sales tax. Dkt. 14, at 9–10. But none of these things are directly related to the state of purchase, and Linehan cites no authority supporting his contrary view.

The court concludes that plaintiffs didn't purchase the truck in Wisconsin because they didn't sign the purchase contract or make a down payment here.

**B. Transfer**

Plaintiffs contend that the term "transfers" means "physically transfers" or "takes possession." PACCAR doesn't offer a specific definition, but it contends that the statute is referring to a transfer of *rights* rather than to a transfer of the physical vehicle itself.

As with the term "purchases," the Lemon Law doesn't define the term "transfer." But some insight is provided by the statute's definition of "consumer," which sets forth the parties who may sue under the Lemon Law. Among the examples of a consumer are the following:

> 1. The *purchaser* of a new motor vehicle, if the motor vehicle was purchased from a motor vehicle dealer for purposes other than resale.
>
> 2. A person to whom the motor vehicle is *transferred* for purposes other than resale, if the transfer occurs before the expiration of an express warranty applicable to the motor vehicle.

Wis. Stat. § 218.0171(1)(b) (emphasis added). In these two provisions, it is clear that "purchase[]" and "transfer[]" are both referring to obtaining a legal interest in the vehicle. Specifically, § 218.0171(1)(b)1 applies when the consumer buys a vehicle from a dealer; § 218.0171(1)(b)2 applies when the original purchaser transfers ownership of the vehicle to another person while the warranty is still in effect. It would make no sense to read § 218.0171(1)(b)2 as referring to mere physical possession of the vehicle because that would not give the "transferee" any legal rights over the vehicle. That interpretation would also allow anyone who physically possessed a vehicle still under warranty to bring a claim under the Lemon Law, even if he or she had no legal rights over the vehicle.

It is reasonable to read § 218.0171(1)(d) the same way as § 218.0171(1)(b). *Sw. Airlines Co. v. Dep't of Revenue*, 2021 WI 54, ¶ 23, 397 Wis. 2d 431, 441, 960 N.W.2d 384, 389 ("We . . . interpret statutory language in the context in which it is used; not in isolation but as part

5

of a whole; in relation to the language of surrounding or closely-related statutes." (internal quotation marks omitted)). In other words, "purchases" and "transfers" are not two discrete events that occur separately as part of a larger transaction; rather, they are simply alternative ways that the consumer may obtain a legal interest in the vehicle for the purpose of becoming a consumer. So a consumer either "purchases" a vehicle *or* "accepts transfer" of it under § 218.0171(1)(d). Plaintiffs obtained the truck through a purchase rather than a transfer, so they did not "accept[] transfer" of the truck within the meaning of the Lemon Law.

Even if a consumer could both purchase a truck and accept transfer of it under § 218.0171(1)(d), the court isn't persuaded that plaintiffs accepted transfer in Wisconsin. Other Wisconsin statutes support a reading of the term "transfers" as referring to legal interests rather than physical possession. For example, PACCAR relies on Wis. Stat. § 342.01(1)(c), which is part of the statute on vehicle titles and defines the term "transfer" to mean "change ownership by purchase, gift or any other means." Wis. Stat. § 340.01, which includes definitions that apply to all of Wisconsin's vehicle statutes in chapters 340 to 349 and 351, defines "[t]ransferee" in part as "any person . . . to whom ownership of a motor vehicle is transferred by purchase, gift or any means other than by creation of a security interest." Wis. Stat. § 340.01(71n). Numerous other statutes also use the terms "transfer" and "accept transfer" to mean transfer of rights rather than transfer of physical possession, including in the context of vehicle transactions.[2] Plaintiffs cite no contrary examples. Rather, when the Lemon

---

[2] *See, e.g.*, Wis. Stat. § 77.10(1)(b) (referring to "a transfer of ownership signed by the owner and an acceptance of transfer signed by the grantee" for real property); Wis. Stat. § 218.23(1) ("If the dealer subsequently wishes to transfer such vehicle to another person, the dealer shall make such transfer only by bill of sale."); Wis. Stat. § 218.33(2)(b) (referring to "ownership of the vehicle [that] was transferred through an auction sale"); Wis. Stat. § 229.44 (granting a special purpose district the right to "[a]cquire; lease, as lessor or lessee; use; or transfer or accept transfers of property"); Wis. Stat. § 292.31(7)(am)1 ("The department may accept the transfer

Law is referring to possession or delivery of a vehicle, it uses those terms expressly. *See, e.g.*, Wis. Stat. § 218.01071(1)(g)2 (discussing a situation in which the "vehicle is in the possession of the consumer"); Wis. Stat. § 218.0171(2)(a) (allowing consumer to bring a cause of action "before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer"); Wis. Stat. § 218.0171(8)(b)2 (requiring certain form to include "the date of delivery of the motor vehicle from the dealer").

Because plaintiffs obtained their ownership rights over the vehicle in Minnesota, that is where any acceptance of transfer occurred. Plaintiffs point to no effect that their taking possession of the truck had on their legal interest in the truck.

Plaintiffs rely on *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806 (E.D. Wis. 2008), to support a view that they accepted transfer of the truck when they took physical possession of it. Like Linehan, the plaintiffs in *Lamont* lived in Wisconsin and brought a claim under the Wisconsin Lemon Law. The vehicle at issue was a motor home that was offered for sale in Illinois. The plaintiffs negotiated a price, agreed to a purchase, and made a down payment with their credit card on the telephone while they were in Wisconsin and the sales representative was in Illinois. They later paid the remaining balance on the truck and signed all the paperwork in Illinois. They returned to Illinois a week later, took possession of the motor home, and drove it to their home in Wisconsin. Several months later, the motor home was titled in Wisconsin. *Id.* at 807–08.

---

of an interest in property . . ."); Wis. Stat. § 710.11 (imposing requirements on a person who "accept[s] the transfer of the ownership of a specific piece of land on which a dam is physically located").

As relevant to this case, the *Lamont* plaintiffs argued that they had accepted transfer of the vehicle in Wisconsin within the meaning of § 218.0171(1)(d) because title to the vehicle was issued to them in Wisconsin. 569 F. Supp. 2d at 810–11. The court rejected this argument, concluding that "a transfer of ownership from a dealer to a buyer is separate and distinct from the issuance of a new title." *Id.* at 811. More specifically, the court stated that "a transfer of ownership takes place before a new title to a vehicle is issued," citing multiple statutes from chapter 342 that identify a "transfer" of a vehicle as occurring before the title is issued.[3] From this, the court "conclude[d] that the phrase 'accept transfer of,' as used in section 218.0171(1)(d), refers to transfer of possession of the motor home." *Id.* at 812.

The primary question in *Lamont* was whether a transfer occurs under § 218.0171(1)(d) where the title is issued. The court agrees with *Lamont* that it doesn't, and *Lamont*'s reasoning on that point is persuasive. The court's statement that "transfer" refers to "possession" isn't necessary to the court's holding, so it's dicta. *Lamont* didn't expressly consider the question whether "transfer" refers to a consumer's legal interests rather than physical possession, and the court didn't discuss § 218.0171(1)(b)1 and § 218.0107(1)(b)2, which, as discussed above, provide important context for determining the meaning of "purchases" and "accepts transfer" in § 218.0171(1)(d). Moreover, *Lamont*'s statement equating transfer with possession is inconsistent with its own analysis: none of the statutes in chapter 342 that *Lamont* cited refer to a transfer as a change in physical possession. Rather, they refer to transfer of a legal interest. *See*, *e.g.*, Wis. Stat. § 342.15(1)(a) ("If an owner transfers an interest in a vehicle . . ."). So

---

[3] *See*, *e.g.*, Wis. Stat. § 342.15(1)(a) (describing steps that an owner of a vehicle must take "[i]f an owner transfers an interest in a vehicle," including "execute an assignment and warranty of title to the transferee"); Wis. Stat. § 342.16(1)(a) ("Within 7 business days following the sale or transfer, the dealer shall process the application for certificate of title.").

nothing in *Lamont* persuades this court that a "transfer" under § 218.0171(1)(d) refers to taking physical possession rather than obtaining a legal interest.

There is one additional wrinkle that warrants attention, which is how lessees fit into § 218.0171(1)(d). The current version of the Lemon Law includes not just a purchaser and transferee in the definition of "consumer," but also "[a] person who leases a motor vehicle from a motor vehicle lessor under a written lease." Wis. Stat. § 218.0171(1)(b)4.

Does a lessee "purchase[]" or "accept[] transfer" of a vehicle within the meaning of the 218.0171(1)(d)? *Lamont* suggested that the inclusion of lessees in the statute supports a conclusion that transfer refers to possession because a lease doesn't involve a purchase. 569 F. Supp. 2d at 812. But the inclusion of lessees in the definition of "consumer" is weak evidence that a "transfer" under § 218.0171(1)(d) refers to taking possession. This is because the definition of "consumer" didn't even include lessees when the legislature first included the requirement in a previous version of the Lemon Law that a consumer must "purchase[] or accept[] transfer of [the vehicle] in this state." *See* Wis. Stat. § 218.015(1)(b) and (d) (1985–86). So the legislature couldn't have been thinking of lessees when it included that requirement.

It isn't clear why the legislature didn't amend the definition of "motor vehicle" at the same time it added lessees to the definition of "consumer." But the ordinary meaning of "purchase" is broad enough to encompass a lease. *See Black's Law Dictionary* (11th ed. 2019) (defining "purchase" as "[t]he acquisition of an interest in real or personal property"). It would also be consistent with *Begalke*, which simply requires a down payment and a contract. Regardless of whether a lease is more appropriately viewed as a purchase or transfer, the court isn't persuaded that the inclusion of lessees in the Lemon Law shows that a transfer under § 218.0171(1)(d) is a change in physical possession rather than a change in a legal interest.

Plaintiffs neither purchased nor accepted transfer of their truck in Wisconsin. So plaintiffs may not bring a claim under the Wisconsin Lemon Law, and PACCAR is entitled to summary judgment.

## ORDER

IT IS ORDERED that defendant PACCAR Inc.'s motion for summary judgment, Dkt. 8, is GRANTED. The clerk of court is directed to enter judgment in PACCAR's favor and close this case.

Entered November 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge